# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CRYSTAL PRISCILLA KEITH,

                              Plaintiff,

v.

DAVID RUPLES, HEATHER JUSTMANN,
DEANNE SCHAUB, DAVID TARR, and
CHRISTOPHER COOPER,

                              Defendants.

Case No. 16-CV-311-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Crystal Keith ("Keith"), a prisoner, brings this action pursuant to 42 U.S.C. § 1983 against Defendants, prison officials at Taycheedah Correctional Institution ("TCI"), alleging that they failed to protect her from assault by a fellow inmate and were deliberately indifferent to her suicidal tendencies. Keith has filed what appear to be two separate motions for summary judgment—the first on September 19, 2016 and the second on September 28, 2016. (Docket #31 and #36). Defendants responded with their own motion for summary judgment on October 24, 2016, arguing that Keith's claims must be dismissed for her failure to exhaust her administrative remedies prior to filing this lawsuit. (Docket #38). All the pending motions are fully briefed and, for the reasons stated below, the Court will grant in part and deny in part Defendants' motion and deny Keith's motions.

## 2.    STANDARD OF REVIEW

### 2.1    Summary Judgment

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

### 2.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and she must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001); *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code DOC § 310.04. There are two steps an inmate must take to exhaust their administrative remedies under the ICRS. First, the inmate must file a complaint with the Institution Complaint Examiner ("ICE"). *Id.* at §§ 310.07(1) and 310.09(6). The ICE then investigates the complaint and issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* at §§ 310.07(2) and 310.11.[1] The reviewing authority may accept or reject the ICE's recommendation. *Id.* at § 310.07(3). Second, if the ICE recommends dismissal and the reviewing authority accepts it, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE"). *Id.* at §§ 310.07(6) and 310.13. The CCE issues a recommendation to the Secretary of the Department of Corrections who may accept or reject it. *Id.* at §§ 310.07(7), 310.13, and 310.14. Upon receiving the Secretary's decision, or after forty-five days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* at §§ 310.07(7) and 310.14.

3.     **RELEVANT FACTS**

3.1     **Keith's Failure to Dispute the Material Facts**

Most of the relevant facts are undisputed, largely because Keith failed to dispute them. To show why, the Court will briefly recount the procedural history and substantive failings of Keith's submissions.

In the Court's scheduling order, entered June 20, 2016, Keith was warned about the requirements for supporting and opposing a motion for

---

[1] The ICRS defines a "reviewing authority" as "the warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint." Wis. Admin. Code. § 310.03(2).

summary judgment. (Docket #14 at 1–2). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. Nevertheless, on September 19, 2016, Keith submitted a one-page document that purported to be a joint motion for summary judgment and motion for appointment of counsel. (Docket #31). The motion was not accompanied by a statement of material facts as required by the Federal Rules of Civil Procedure and this Court's Local Rules. *See* Fed. R. Civ. P. 56(c); Civ. L. R. 56(b)(1). A few days later, on September 26, 2016, she filed a motion to "supplement" her summary judgment motion. (Docket #32). Appended to this "supplement," which reads like a stream-of-consciousness factual summary of Keith's case, were 115 pages of "exhibits." (Docket #33). Keith again failed to file a statement of material facts which condensed these exhibits and her thoughts into the format required by the applicable procedural rules.

Keith filed a second motion on September 28, 2016, without affording Defendants an opportunity to respond to the first one. (Docket #36). This second motion is two pages in length. *Id.* It contains a two-paragraph "statement of facts," but the motion is not accompanied by a statement of facts that comports with the Federal or Local Rules, nor was there any evidentiary material appended to the motion. Instead, Keith refers back to the set of materials she submitted to the Court on September 26. *See id.* at 1–2.[2]

_____

[2]Defendants filed a separate response to Keith's two motions for summary judgment on October 28, 2016. (Docket #44). Noting that her motions did not comport with the Federal or Local Rules, Defendants simply incorporated their evidence and argument from their own motion for summary judgment, which they had filed a few days prior. *See id.* at 1–2.

On October 24, 2016, Defendants filed their own motion for summary judgment. (Docket #38). In the motion, Defendants warned Keith about the requirements for her response as set forth in Federal and Local Rule 56. *Id.* at 1–2. She was provided with copies of those Rules along with Defendants' motion. *See id.* at 3–11. In connection with their motion, Defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #39). It contained short, numbered paragraphs concisely stating those facts which Defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

In response, Keith submitted a single document with attached exhibits. (Docket #45). In this document, Keith appears to discuss each of her attached exhibits in turn and presents her own thoughts on why Defendants violated her constitutional rights. *See id.* She never filed a response to Defendants' statement of material facts. Indeed, she never grapples with Defendants' factual assertions directly. Instead, she presents her own version of the facts and, presumably, hopes that the Court takes her word over Defendants'. She took the same approach to her reply in support of her second motion for summary judgment (a brief which was filed two weeks late). (Docket #48).

Despite being twice warned of the strictures of summary judgment procedure, Keith chose to ignore those rules by filing motions for summary judgment that do not contain all the required elements of such a motion, and by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. These infirmities cannot be overlooked. Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as her lawyer; the Court cannot and will not delve through all

of Keith's submissions in this case to find the evidence that might be leveraged to dispute Defendants' proposed facts. Indeed:

> [a] district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). In short, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Smith's summary-judgment materials were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record. As such, Smith's purportedly good intentions aside, the district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). This Court would offer a similar analogy: it is not an archaeologist, made to sift through Keith's filings hoping to piece together clues to the evidence behind her legal positions. The Court is cognizant of the fact that Keith lacks legal training, as she complains

in her motions for appointment of counsel. *See* (Docket #31 and #47).[3] Yet, under *Smith*, no matter Keith's intentions, her utter failure to comply with the rules of procedure means that the Court has no choice but to disregard her the bulk of her summary judgment filings. *See Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006). Unless stated otherwise, the Court will deem Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e). However, the Court has

---

[3]Keith's requests for appointment of counsel must be denied. As a civil litigant, she has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent the plaintiff if she: (1) has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. banc 2007)). Here, Keith's sole argument that she should be appointed counsel is that she is untrained in the law and wants help with her case. *See* (Docket #31 and #47). She made no meaningful attempt to show that she has attempted to secure counsel, nor did she explain how this case is beyond her ability to present. As a result, the Court must deny her requests.

generously reviewed all of Keith's filings and will discuss her notable submissions as it sets forth the relevant facts below.[4]

### 3.2 Facts Pertinent to the Disposition of Defendants' Motion

#### 3.2.1 The Parties

The facts necessary to the disposition of Defendants' motion are as follows. Keith is an inmate at TCI. (Docket #39 ¶ 1). TCI is the only female facility within the Wisconsin Women's Correctional System and it houses both medium- and maximum-security inmates. *Id.* ¶ 11. Defendant Deanne Schaub ("Schaub") is the warden of TCI. *Id.* ¶ 2. Schaub is the reviewing authority for inmate complaints at TCI. *Id.* ¶ 4. Defendant David Ruples ("Ruples") is a sergeant at TCI. *Id.* ¶ 6. Defendants Heather Justmann ("Justmann") and Christopher Cooper ("Cooper") are captains at the institution. *Id.* ¶ 7. At all times relevant to Keith's complaint, Defendant David Tarr ("Tarr") was the Security Director at TCI. *Id.* ¶ 8.

---

[4]Although the Court has reviewed all of Keith's filings, it has disregarded those filings that came after her reply. *See* (Docket #49, #50, and #51). Those submissions, filed in late December 2016, come well after the close of briefing for Keith's and Defendants' motions. They are comprised largely of stream-of-consciousness accounts of the events underlying Keith's lawsuit and copies of various notes, conduct reports, inmate complaints, and psychological services requests. Most, if not all, of these documents appear to post-date the filing of her complaint in this case. Keith provides no explanation of the relevance of these newly submitted documents. To the extent Keith believes she can assert new claims in this case at this late stage based on events that occurred after the filing of the complaint, she is mistaken. Moreover, the time for Keith to amend her motion for summary judgment, *see* (Docket #50), has long since passed, and Keith provides no justification for such an amendment. And in any event, her amended brief argues the merits of her deliberate indifference claims, which are not at issue here since Defendants seek summary judgment only on the issue of exhaustion of administrative remedies. Accordingly, the request to amend her motion will be denied and the Court will not rely upon any of Keith's late filings in reaching the disposition herein.

### 3.2.2 Keith's Interactions with Castillo

Keith and another inmate, Ashli Castillo ("Castillo"), were both designated as maximum-security inmates at TCI. *Id.* ¶ 21. They were housed in the McCauley unit, the only general population and maximum-security housing unit in the prison. *Id.* ¶¶ 16–21. On October 29, 2013, they became cellmates. *Id.* ¶ 22. At that time, neither had a special placement need ("SPN") restricting them from being placed in a general population setting or from being housed near each other. *Id.* ¶ 23. SPNs are assigned by prison officials when there is a need to separate particular inmates from other inmates or staff. *Id.* ¶ 14. Schaub explains that "[a] formal SPN involving inmates notifies everyone that the inmates named should be kept separate from each other. It is also referred to as a no contact order." *Id.* ¶ 15. An SPN designation means that the two inmates in question should be housed at completely different facilities. *See id.* ¶ 51.

On January 28, 2014, a correctional officer noticed that Keith was covering up her eye as if to hide it. *Id.* ¶ 24. On questioning, Keith admitted that Castillo had hit her with the cord of a fan and left an open cut above Keith's eye. *Id.* Keith explained other ongoing harassment and physical abuse she suffered at Castillo's hands, including being stabbed with a pen. *Id.* ¶ 25. Keith was advised to write a statement about what she had told prison staff and was then moved to another McCauley cell and offered medical attention. *Id.* ¶ 26. Castillo was escorted to the segregation unit, which at TCI is called the Restrictive Housing Unit ("RHU"), and housed there pending an investigation of Keith's complaints. *Id.* ¶ 27.

While Keith's complaints were being investigated, prison officials did not enter an SPN directing that she and Castillo remain separated. *Id.* ¶ 28. In the view of prison officials, a no-contact order was unnecessary because

the inmates were being housed in separate units of the prison. *Id.* On March 3, 2014, Castillo was found guilty of battery and damage to property as alleged in a prison conduct report. *Id.* ¶ 30. She was sanctioned with 300 days of disciplinary segregation in the RHU. *Id.*

Castillo was removed from disciplinary segregation and returned to McCauley on July 19, 2014. *Id.* ¶ 32. Castillo had to be placed back in McCauley since it was the only general population housing unit available for a maximum-security inmate like her. *Id.* ¶ 33.[5] Nevertheless, in light of their history, prison officials placed Keith and Castillo in different wings of the McCauley unit so as to avoid contact between them. *Id.* ¶ 35. They also took steps to ensure that Keith and Castillo did not share dayspace, recreation space, or library space at the same time. *Id.* ¶ 37.

On January 21, 2015, Keith submitted an inmate complaint requesting a separation from Castillo, alleging that Castillo continued to verbally harass her when they crossed paths and that Keith felt threatened. *Id.* ¶ 48. Prison officials investigated but concluded that an SPN designation was not required since there was nowhere else to send either Keith or Castillo—again, TCI is the only maximum-security female prison in the state, and McCauley is the only general population unit for maximum-security TCI inmates. *Id.* ¶ 49. However, a "special handling order" was implemented to keep Keith and Castillo separated. *Id.* ¶ 50. While an SPN requires that two inmates be separated into two different facilities, a special handling order merely requires that the two inmates be physically separated within one facility. *Id.* ¶ 51. As a result of the order, Keith and Castillo were kept in separate wings

_____

[5]Despite their control over inmate housing assignments, prison security officials and even Schaub herself lack the authority to alter an inmate's security classification. (Docket #39 ¶ 39).

of the McCauley unit. *Id.* ¶ 52. Prison staff also continued their efforts to ensure that Keith and Castillo did not share dayspace, recreation space, or library space concurrently. *Id.* ¶ 54. On March 12, 2015, Tarr recommended that Keith and Castillo be separated to different sides of the McCauley unit in order to further reduce the risk of contact between them. *Id.* ¶ 55.

Castillo was released from incarceration at TCI on November 15, 2015 and has not returned. *Id.* ¶ 56.

### 3.3.3   Keith's Mental Health Treatment

During the relevant period (and continuing to this day), Keith received mental health treatment for the emotional trauma she suffered as a result of Castillo's abuse. *See* (Docket #32 at 1–2); (Docket #33 at 41). The Court need not wade through all of Keith's psychological treatment records for purposes of this order. It is enough to note that on April 23, 2015, Keith attempted suicide by overdosing on medication. (Docket #32 at 2); (Docket #33 at 67–72). After treatment at a hospital, it appears she was placed in segregation for observation. (Docket #32 at 2). When she was released from the RHU on April 27, 2015, Ruples tried to escort Keith to a cell in the McCauley unit. (Docket #33 at 73–81, 88–89, 91–92). Keith told Ruples that if she was placed in that cell, she would kill herself. *Id.* Keith refused to comply with Ruples' orders, Ruples informed Justmann of Keith's non-compliance, and Justmann took Keith to segregation and mental health observation. *Id.* When she was taken back to the RHU, she again threatened or attempted to commit suicide, this time by banging her head repeatedly against the cell bars. *Id.*

### 3.3.4   Keith's Claims in this Case

At the screening stage, the Court permitted Keith to proceed on the following claims:

(1)     that Defendants failed to protect Keith from assault by Castillo by failing to issue a no-contact order, in violation of the Eighth Amendment;

(2)     that Defendants were deliberately indifferent to Keith's risk of suicide when they placed her back on McCauley unit after she informed Defendants that she would kill herself if placed there, in violation of the Eighth Amendment; and

(3)     Defendants were deliberately indifferent to Keith's risk of suicide when they took her back to segregation where she again allegedly tried to commit suicide, in violation of the Eighth Amendment.

*Id.* ¶ 10; *see also* (Docket #8 at 5–6).

### 3.3.5   Keith's Inmate Complaints

Wendy Buehrens ("Buehrens") is the ICE at TCI. *Id.* ¶ 82. It was her duty to review inmate complaints, investigate them, and either reject them herself or make a recommendation as to the disposition of the complaint to the reviewing authority, Schaub. *Id.* ¶¶ 83–89. Buehrens investigated Keith's January 21, 2015 complaint, which was designated TCI-2015-1394. *Id.* ¶ 93. In that complaint, Keith stated:

> I asked Ms. Zink for a no contact order. She said there's nothing she can do. I'm messed up. I'm scared. I'm hurting. Nobody's helping me. Castillo might attack me. I told them this. I want a no contact order on her and me. I went through the chain of commands to receive help. I feel as if staff from low to high take my situation as a joke. Jamie Sommers and other was sexually assaulted here. From that they suffered trauma. They can't be in A/B cause of that. I was beaten, spit on, and verbally abused in cell 108 and cell 116 by Ashli Castillo. There's a open case against her now for those actions. She is harassing me now. I went to staff. They refuse to do anything. I'm scared to death I'm having flash backs. She's yelling my name as I walk pass other inmates witness this. Twice in one day 01-12-15 she yelled my name at lunch and

dinner. I have to pass her cell to leave my cell. She yelled other stuff to. I am traumatize. These cells are the absolute same as 108 and 116 where I was beaten. I am not being help. I want a NO contact put against us. She won't stop. I am scared to leave my cell. I am consulting a attorney about T.C.I. lack of help and concern for my safety. . . .

*Id.* ¶ 92. Buehrens investigated Keith's allegations and found that she had been provided a form for requesting separation from Castillo. *Id.* ¶ 98. Buehrens also found that a prison social worker, Ms. Zink, was completing an incident report that would form the basis of a request for an SPN between Keith and Castillo. *Id.* Buehrens noted that the security director or his designee would ultimately review the SPN request and either approve or deny it. *Id.* ¶ 99.

Based on these findings, on January 21, 2015, Buehrens recommended that Keith's complaint be dismissed to allow for the process of Keith requesting separation from Castillo to be initiated and processed. *Id.* ¶ 100. Acting as the reviewing authority in this instance, deputy warden Scott Eckstein ("Eckstein") accepted Buehrens' recommendation and dismissed Keith's inmate complaint on January 22, 2015. *Id.* ¶ 101. Keith was provided a copy of the dismissal and was informed that any appeal had to be taken within ten calendar days of the date of the decision by filing a written request for review with the CCE using the appropriate form. *Id.* ¶ 102. Keith did not appeal the dismissal of TCI-2015-1394. *Id.* ¶ 103.

Keith submitted another complaint, designated TCI-2015-21332, on November 13, 2015. *Id.* ¶ 104. This complaint related the events of April 27, 2015, in which Keith refused Ruples' order to occupy a cell in McCauley and was thereafter sent to the RHU. *Id.* Keith claimed that Ruples' actions violated prison policy. *Id.* Buehrens reviewed this complaint and rejected it

on December 16, 2015, finding that it was not submitted within fourteen calendar days of the incident in question, in violation of the Wisconsin Administrative Code, and that no good cause was proffered to support extending that deadline. *Id.* ¶ 107. Keith was provided a copy of the rejection. *Id.* ¶ 108. She was informed that she could appeal the rejection within ten calendar days by submitting the appropriate form and that, on review, the reviewing authority would only review the basis for the rejection—here, untimeliness—and not the merits of the complaint. *Id.* ¶ 109. Keith did not appeal the rejection of TCI-2015-21332. *Id.* ¶ 110.

Keith filed an additional complaint on November 13, 2015, which was designated TCI-2015-21333. *Id.* ¶ 111. She alleged that on January 28, 2014, TCI officials had failed to protect her and failed to ensure she was provided appropriate mental health treatment. *Id.* ¶ 112. Keith alleged that she was still being housed with Castillo in the McCauley unit and that she continued to relive the horrible things Castillo did to her. *Id.* ¶ 113. Keith stated that she had asked to be designated a medium-security inmate so that she could be transferred out of McCauley but that those requests had been denied. *Id.* She further claimed that prison staff did not take Keith's fears of Castillo seriously, thereby opening additional opportunities for Castillo to assault her. *See id.* ¶ 114.

Buehrens reviewed this complaint. *Id.* ¶ 115. She rejected it on December 16, 2015, for the reason that it was filed well outside the 14-day deadline and because no good cause was shown for the delay. *Id.* Keith was provided a copy of this rejection and was again informed about the appeal

process and 10-day appeal deadline. *Id.* ¶¶ 116–17. Once more she failed to appeal. *Id.* ¶ 118.[6]

Buehrens has diligently searched TCI's records of inmate complaints. *Id.* ¶ 119. Buehrens avers that her search has revealed that Keith filed no appeals of inmate complaints that address allegations of (1) failure to protect Keith by issuing a no-contact order or (2) placing Keith back in the same unit as Castillo despite her warning that she would commit suicide if that occurred. *Id.* ¶ 119–20. Neither do TCI records reflect that Keith filed any inmate complaints containing allegations that Justmann took Keith to segregation where she again attempted suicide. *Id.* ¶ 121. Finally, Buehrens' search uncovered no inmate complaints beyond those discussed herein that relate to the allegations in this action. *Id.* ¶ 122; *see also* (Docket #40-1) (Keith's inmate complaint history).

In her briefing and evidentiary submissions, Keith points to two other inmate complaints from this period, not mentioned by Defendants, which she contends served to exhaust her administrative remedies. First, she filed a complaint on May 26, 2015, designated TCI-2015-9680, which she believes incorporates all the allegations raised in the instant complaint. *See* (Docket #45 at 1–2). That complaint states as follows:

> I am writing this complaint on the behalf of the Warden denying and affirming the Hearing Officer's decision on the appeal I sent her on the appeal of my disposition. I have

---

[6]Upon close inspection of this inmate complaint, it appears that Keith may have been complaining that even as of the date of the complaint, she continued to be denied the protection and mental health treatment she needed. *See* (Docket #40-4 at 6–8). Thus, Buehrens may have been in error to conclude that the operative date for determining the timeliness of the complaint was January 28, 2014, despite Keith's notation of the same on the first page of the complaint. Nevertheless, since Keith failed to appeal Buehrens' rejection, the Court cannot second-guess it.

intellectual functioning when Ms. Venne gave me my ticket I didn't understand nothing but that guilty goes faster and check the waiver boxes to go faster. I didn't understand my rights and the process of tickets. In T.C.I. handbooks it's stated and printed it an inmate needs to see clinical staff immediately (emergency-type situation) bring the issue/concern to the attention of unit staff (in my case Sgt. Ruples). If I go in that cell I will commit suicide is said to my unit staff, it's a emergency cause I was about to cut myself with my scissors until I couldn't cut no more (a plan in place) that's a emergency. Sgt. Ruples said I refused to lock in after those comments do suppose to lock in? No. I was to be supervise but was placed in the [unintelligible] room alone. Clinician/PSU was to be called, instead he called the Cpt. to put in seg for refusing to lock-in. Continue next pg. . . . My trauma is Castillo and MC West/North building also staff. This been a factor. Suicide been a factor form these. Further if my suicide comments could've been a sign of refusing to lock in could've don't mean try. I was very serious.

(Docket #33 at 95). Although the document purports to have additional pages, Keith did not provide them. *See id.* At the top of the inmate complaint, Keith also wrote that "'take me back to MSMU' is a clear statement of suicide. I said if I go in that cell I will commit suicide." *Id.*

Buehrens eventually rejected or denied this complaint, and Keith then appealed to the CCE. *See id.* at 100–02; (Docket #45-1 at 2–4). The CCE reviewed Keith's complaint and noted that inmates can only use an inmate complaint to challenge the procedures used during the disciplinary process. (Docket #33 at 100). Inmates may not use an inmate complaint as a collateral attack on the substantive result of the disciplinary proceedings *See id.* Under that limited scope of review, the CCE found that Keith proffered insufficient evidence that she was unaware of the proper procedures for appealing the adverse disciplinary determination. *Id.* at 102. As a result, on March 23, 2016,

the CCE recommended dismissing the appeal, and the Secretary of the Department of Corrections agreed. *Id.* at 101–02.

In her reply, Keith also refers to a complaint filed May 18, 2015, designated TCI-2015-8959. (Docket #48 at 1). In this complaint, Keith alleged that she was wrongfully sanctioned with too much time in segregation, apparently for her misconduct on April 27, 2015. *See* (Docket #48-1 at 2–3). She also complained that she was not provided copies of prison policies and procedures on request. *Id.* Buehrens recommended that this complaint be dismissed, as she found after an interview with Keith that none of her claims had merit. *See id.* Schaub, who reviewed the recommendation, concurred. *Id.* at 4. Defendants' records reflect that Keith failed to appeal this dismissal. (Docket #40-1).

4.      **ANALYSIS**

Defendants request summary judgment on a single ground: that Keith failed to exhaust her administrative remedies before filing the instant lawsuit. As noted above, exhaustion of remedies is strictly enforced: a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Nevertheless, Defendants bear the burden to prove a failure to exhaust as an affirmative defense. *Westefer*, 422 F.3d at 580. Based on the factual record before it, the Court finds that Keith failed to exhaust her failure-to-protect claim, but not her two deliberate indifference claims. The Court will assess each of her three claims in turn.

First is Keith's claim that Defendants failed to protect her from Castillo by failing to issue a no-contact order. On the undisputed facts in the record, Keith failed to follow the ICRS process to its completion for any of her inmate complaints relating to this claim. *See* Wis. Admin. Code DOC §

310.04–14. She filed several complaints raising this sort of claim, including TCI-2015-1394 and TCI-2015-21333, but these were rejected by the ICE or dismissed by the reviewing authority. She did not appeal those decisions. Moreover, TCI's records reflect that Keith did not file any other complaints containing allegations pertinent to this claim. *See Bouman v. Robinson*, No. 07-C-367-C, 2008 WL 2595180, at *2 (W.D. Wis. June 27, 2008) (noting that a defendant must prove exhaustion not only through explaining the disposition of relevant complaints but also providing sworn statements that no other relevant complaints exist).

Keith does not directly challenge this evidence. Instead, she points to complaint TCI-2015-9680, which was properly appealed and exhausted. Keith apparently believes that this complaint encompasses all her allegations of wrongdoing in this case, and therefore she has met the exhaustion requirement for all of her claims. However, her reliance on TCI-2015-9680 is misplaced since it contains no mention of Defendants' failure to provide a no-contact order.

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). To provide notice of the conduct complained of, an inmate's complaint must contain the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly

to some asserted shortcoming." *Strong*, 297 F.3d at 650; *Riccardo*, 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e).

Read with these principles in mind, complaint TCI-2015-9680 failed to put Defendants on notice of Keith's claim about a no-contact order. Even under the most generous reading of this inmate complaint, it fails to relay Keith's concerns regarding Defendants' failure to provide such an order. In fact, the only time it mentions Castillo at all is to say that Castillo was the source of Keith's "trauma" and that Castillo was the reason Keith was suicidal upon being forced to re-enter McCauley on April 27, 2015. Thus, Keith's failure-to-protect claim was not exhausted through TCI-2015-9680.

The result is different, however, with respect to Keith's two other claims. Those claims are both for Defendants' deliberate indifference to Keith's risk of suicide on April 27, 2015. One of these claims relates to Ruples' attempt to place her back in McCauley after she informed him that she would kill herself if placed there, and the other relates to Keith's suicide attempt during segregation intake later that day. Although it is a close question, the Court finds that TCI-2015-9680 provided Defendants with sufficient notice as to each of these claims, and, as a result, that Keith exhausted her administrative remedies with respect to each.

In this inmate complaint, Keith alleges that Ruples violated a provision of the TCI handbook by failing to take her to see medical staff after she notified him of her suicidal ideation. She explains that Ruples ignored her

medical emergency and instead sent Keith to segregation for failing to comply with his order. Though her role is unclear, Keith alleges that Justmann also played a part, since Ruples called her to either notify her of his decision to take Keith to the RHU or to request approval the move. The complaint makes no mention of Keith's subsequent suicide attempt during the RHU intake process.

Given the very low bar set by the Seventh Circuit for the contents of inmate complaints, the Court finds that Keith's allegations were sufficient to place Defendants on notice of Keith's deliberate indifference claim relating to Ruples' conduct in the McCauley unit on April 27, 2015. The Court of Appeals' decision in *Riccardo* is instructive here. In that case, a correctional officer, Rausch, paired two inmates to a cell, and one inmate later sexually assaulted the other. *Riccardo*, 375 F.3d at 523. The victim, Riccardo, filed an inmate complaint asking that his assailant be prosecuted. *Id.* Riccardo then filed a federal suit against Rausch for inappropriately deciding that the two inmates should be paired. *Id.* The Seventh Circuit found the "main objective" of Riccardo's complaint was to have his assailant prosecuted. *Id.* at 524. In the Circuit's view, however, the complaint was sufficient to put prison officials on notice of the placement claim. *See id.* Riccardo had stated that "the administration don't [sic] do there [sic] job. [A sexual assault] should've never [sic] happen again." *Id.* This concern, although "at the border of intelligibility," was enough to show that Riccardo complained about his rape and about the prison administration's failure to protect him. *Id.*; *see also Westefer*, 422 F.3d at 580 (substantive complaints about the conditions at a new facility were enough to place official on notice that the inmates challenged their transfer to the new facility).

Here, the analysis is the same. Although Keith's complaint is primarily focused on the denial of her disciplinary appeal, she did announce her concerns about Defendants' failure to appropriately address her threats of suicide upon entering the McCauley unit. Arguably, this was Keith's attempt to re-argue the merits of the disciplinary decision. But whatever their purpose, the operative inquiry is whether Keith's allegations alerted Defendants to her potential claim. Consistent with Seventh Circuit precedent, the Court finds that they did. *See Strong*, 297 F.3d at 650 (finding exhaustion where inmate's complaint was "comprehensible" and "object[ed] intelligbly to some asserted shortcoming").[7]

The same goes for Keith's deliberate indifference claim arising from her suicide attempt in the RHU on April 27, 2015, despite the fact that this occurrence is not mentioned in TCI-2015-9680. The district court in *Johnson v. Larson-Smith*, No. 13–cv–309–wmc, 2015 WL 3755965, at *5 (W.D. Wis. June 16, 2015), faced a similar problem. There, the inmate sued prison officials over the conditions of the prison's observation cells. *Id.* at *4. He claimed that

_____

[7]It does not matter that the ICE and CCE failed to address these deliberate indifference allegations, instead focusing on the denial-of-appeal issue. *See* (Docket #33 at 100–01). The Seventh Circuit has found that prison officials' interpretation of a complaint can be circumstantial evidence of its scope. *See Nelson v. Miller*, 570 F.3d 868, 876 n.4 (7th Cir. 2009); *Stewart v. Cox*, 14-cv-665-jdp, 2015 WL 9296457, at *4 (W.D. Wis. Dec. 18, 2015). Yet while the examiners' narrow interpretation of Keith's complaint was not unreasonable, it does not control this Court's exhaustion analysis. All that matters here is whether there were allegations in the complaint that provided adequate notice to prison officials regarding the alleged wrongful conduct. *Strong*, 297 F.3d at 650. Similarly, although the examiners might have rejected Keith's complaint as failing to comply with Wis. Admin. Code DOC § 310.09(1)(e)., which requires a complaint to raise only one issue, the Court cannot enforce administrative rules which prison officials declined to enforce during the administrative process. *See McDaniel v. Meisner*, 617 F. App'x 553, 558 (7th Cir. 2015); *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011).

his observation cell had no mattress or blanket and that he was forced to sleep on a blood-covered concrete floor. *Id.* The inmate complaint underlying his lawsuit made no mention of blood on the cell floor, however. *Id.* The district court nevertheless allowed that portion of his conditions-of-confinement claim to proceed, reasoning that

> dismissing a "portion" of Johnson's conditions of confinement claim does not make sense in light of the PLRA's lenient requirements for the content of grievances. Defendants were undisputedly on notice that Johnson was unhappy with the conditions in observation; they could also infer, from his complaints that he lacked a mattress and blanket, and presumably they would have known that he was being forced to sleep on a concrete floor. To hold that Johnson cannot support his allegations of unconstitutional conditions of confinement with additional facts that were not expressly mentioned in the grievance would be akin to requiring that he "lay out the facts"—a position that the Seventh Circuit rejected in *Strong*. The court declines to impose such a stringent standard, particularly when the Wisconsin Administrative Code contains no such requirement. *Cf. Strong*, 297 F.3d at 650 ("Strong's two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more.").

*Id.*

So too, here, Keith's allegations regarding Ruples' deliberate indifference are closely related in nature and time to her claim relating to her suicide attempt in the RHU. Her failure to expressly relate the RHU incident is not therefore not fatal to her exhaustion of that claim, particularly since, as the *Johnson* court observed, the Wisconsin administrative rules require little in the way of specificity. Keith's allegations about Ruples, generously construed, would have induced prison officials to investigate further and unavoidably discover Keith's suicide attempt later that same day. *See*

*Riccardo*, 375 F.3d at 524. Again, although the question is a close one, the Court finds that Defendants failed to meet their burden of establishing a failure to exhaust administrative remedies on this claim. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Consequently, Keith has exhausted her administrative remedies as to both of her deliberate indifference claims.

5.     **CONCLUSION**

The Court finds that Keith has failed to exhaust her administrative remedies as to her claim that Defendants failed to protect her from Castillo by refusing to issue a no-contact order. Defendants will therefore be granted summary judgment as to that claim.[8] However, the above analysis demonstrates that Keith has properly exhausted her claims for deliberate indifference. Those claims must, therefore, be addressed on their merits.

To facilitate this, the Court will permit both sides thirty days from the date of this order to submit dispositive motions addressing the merits of the remaining claims. The Court cannot rule on the merits of the claims at present since Defendants' motion was directed solely at exhaustion. Additionally, Keith's motions for summary judgment and other filings, though directed at the merits, are woefully inadequate to warrant a grant of summary judgment because they do not comply with the applicable procedural rules, nor do they come close to showing that the undisputed facts require judgment as a matter of law in her favor. *See supra* Part 3.1 (describing Keith's motion filings). As a result, the Court will deny Keith's motions without prejudice and afford the parties additional time to submit new summary judgment motions, if they choose. Keith is advised that if she chooses to submit another motion for

_____

[8]Although it appears highly unlikely that Keith will be able to complete the grievance process for this claim at this late date, dismissals for failure to exhaust are always without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

summary judgment, such motion must comply with the Federal and Local Rules.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #38) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's claim that Defendants failed to protect her from Ashli Castillo by failing to issue a no-contact order, in violation of the Eighth Amendment, be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's motions for appointment of counsel and for summary judgment (Docket #31, #32, #36, and #47) be and the same are hereby **DENIED** without prejudice;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's motion to amend her response to her motion for summary judgment (Docket #50) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the parties may submit new dispositive motions which address the merits of Keith's remaining claims no later than **February 21, 2017**. **The parties are warned that no extensions of this deadline will be granted.**

Dated at Milwaukee, Wisconsin, this 19th day of January, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge