# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CRYSTAL PRISCILLA KEITH,

                Plaintiff,

v.

DAVID RUPLES, HEATHER JUSTMANN, DEANNE SCHAUB, DAVID TARR, and CHRISTOPHER COOPER,

                Defendants.

Case No. 16-CV-311-JPS

**ORDER**

### 1.    INTRODUCTION

Plaintiff Crystal Keith ("Keith"), a prisoner, brings this action pursuant to 42 U.S.C. § 1983 against Defendants, prison officials at Taycheedah Correctional Institution ("TCI"), alleging that they were deliberately indifferent to her risk of suicide.[1] Both parties have filed motions for summary judgment on Keith's claims. (Docket #57 and #59). The motions are fully briefed and, for the reasons stated below, the Court will grant summary judgment in favor of Defendants and dismiss this action.

### 2.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A

---

[1] Keith previously raised a claim that Defendants failed to protect her from assaults by a fellow inmate. *See* (Docket #8 at 5–6). This claim was dismissed for Keith's failure to exhaust her administrative remedies. (Docket #54). In that order, the Court granted the parties additional time to seek summary judgment on the merits of the remaining deliberate indifference claims.

fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3.   **RELEVANT FACTS**

The relevant undisputed facts, viewed in the light most favorable to Keith, are fairly brief.[2] Keith is an inmate at TCI. TCI is the only female facility within the Wisconsin Women's Correctional System and it houses both medium- and maximum-security inmates. Defendant Deanne Schaub ("Schaub") is the warden. Defendant David Ruples ("Ruples") is a sergeant at TCI. Defendants Heather Justmann ("Justmann") and Christopher Cooper

---

[2]Though warned previously about the proper procedures for raising factual disputes on summary judgment, *see Keith v. Ruples*, Case No. 16–CV–311–JPS, 2017 WL 237624, at *2–3 (E.D. Wis. Jan. 19, 2017), Keith again failed to submit a response to Defendants' statement of material facts. Yet she did submit an affidavit and some documentary evidence, *see* (Docket #67, #68, #69), and because her claims must be dismissed even after considering her evidence, the Court will not penalize her further for the procedural failings in her submission.

("Cooper") are captains at the institution. At all times relevant to Keith's complaint, Defendant David Tarr ("Tarr") was the Security Director at TCI.

This case focuses on the events of April 27, 2015, but it originated much earlier. Keith and another inmate, Ashli Castillo ("Castillo"), were both designated as maximum-security inmates at TCI. They were housed in the McCauley unit, the only general population and maximum-security housing unit in the prison. They were cellmates from October 2013 until January 2014. At that time, correctional officers learned that Castillo was physically abusing Keith. Castillo was disciplined with segregation but then returned to the McCauley unit. In light of their history, prison officials tried to keep Keith and Castillo separated as much as possible.

Yet on January 21, 2015, Keith submitted an inmate complaint requesting a separation order from Castillo, alleging that Castillo continued to verbally harass her when they crossed paths and that Keith felt threatened. During this period, Keith received mental health treatment for the emotional trauma she suffered as a result of Castillo's abuse. On April 23, 2015, Keith attempted suicide by overdosing on medication. After treatment at a hospital, it appears she was placed in the restrictive housing unit ("RHU") on observation status—a protective form of confinement for inmates at risk of harming themselves or others.

The instant claims arise from a single incident on April 27, 2015. That day, Keith was being released from observation in the RHU. Sergeant Ruples was working his post in the McCauley unit. At approximately 11:15 a.m., Keith arrived at the unit and Ruples directed Keith to go into cell 204-2, which was her new, general population cell assignment. Keith refused, telling Ruples that she had a separation order preventing her from being placed in the McCauley unit with Castillo.

In response to Keith's concerns, Ruples called Correctional Program Supervisor Gierach. Gierach told Ruples that the separation order was no longer in effect, which he in turn had learned from Tarr. Ruples informed Gierach that he would try to separate Keith from Castillo within the unit by keeping them in different areas of the unit.

After this call, Ruples again directed Keith to go into cell 204-2. Keith continued to refuse, stating she would not go into "that room or that side." Keith also told Ruples that she would kill herself by cutting if he persisted in making her enter cell 204-2. Ruples next called the security supervisor on duty, Justmann. Nothing in the record indicates whether Ruples mentioned Keith's suicide threat at this time. When she arrived at the scene, Keith informed Justmann that she had told Ruples that she would kill herself if forced to go into cell 204-2.[3] Due to Keith's continued refusals to enter her assigned cell, Justmann placed Keith on temporary lock-up ("TLU") status in the RHU pending issuance of a conduct report by Ruples for disobeying

---

[3]Keith claims that while Justmann was en route to assist Ruples, she was placed in a "back room," wherein she contemplated strangling herself with a television power cord. (Docket #58 ¶¶ 8–9). She never told anyone about this, however, and she admits that she did not actually touch the cord before Justmann arrived and escorted her away. *Id.* ¶ 10.

orders.[4] Ruples proceeded to issue a conduct report to Keith for her refusal to obey orders.[5]

Justmann took over custody of Keith from Ruples and escorted her to the RHU. During intake at the RHU, Keith stated she would try to kill herself and then began to bang her head against nearby cell bars. Justmann and security staff members consulted with psychological services staff, and Keith was then placed back in observation status by prison psychologist Dr. Ferguson.

The entire incident on April 27, 2015 took approximately forty-five minutes. The time between when Justmann reported to the McCauley unit and when Keith was moved into observation placement on Dr. Ferguson's orders was only about ten minutes.

4. ANALYSIS

Keith claims that Defendants were deliberately indifferent to her risk of suicide on April 27, 2015. Such a claim has both an objective and a subjective component. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). First, Keith must show that the harm (or potential harm) was objectively, sufficiently serious and a substantial risk to her health. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "It goes without saying that 'suicide is a serious harm,'" *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (quoting

---

[4]TLU is a non-punitive status which separates an inmate from the rest of the population for purposes of completing a disciplinary or other investigation.

[5]Defendants maintain that Keith never made suicide threats to Ruples at all, (Docket #62 ¶ 11), and never mentioned any thoughts of self-harm to Justmann until after Justmann and Keith arrived at the RHU for Keith's TLU placement, (Docket #63 ¶¶10–13). Although Keith failed to dispute Defendants' proffered facts, the Court presents her version of events here because it is clear what factual disputes she intended to raise and, even generously considering the facts as she recalls them, her claims cannot proceed.

*Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)), so this element is not in dispute here.

The parties' attention focuses instead on the second element: that Defendants must have displayed deliberate indifference to Keith's risk of suicide. *Collins*, 462 F.3d at 761; *Sanville*, 266 F.3d at 733. This, in turn, requires a dual showing that Defendants (1) subjectively knew Keith was at substantial risk of committing suicide and (2) were deliberately indifferent to that risk. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003). As to the first prong, Keith must prove that Defendants knew—rather than merely should have known—of a significant likelihood that she might imminently seek to commit suicide. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *Matos*, 335 F.3d at 557.

As to the second prong, Keith must establish that Defendants failed to take reasonable steps to prevent her from committing suicide. *Estate of Novack*, 226 F.3d at 529; *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (a plaintiff must demonstrate that the defendant was "aware of a substantial risk of serious injury to [her] but nevertheless failed to take appropriate steps to protect [her] from a known danger"). This is a heavy burden; the Seventh Circuit has emphasized that deliberate indifference "comprehends more than mere negligence but less than the purposeful or knowing infliction of harm." *Estate of Novack*, 226 F.3d at 529; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Indeed, the Court of Appeals has characterized the required showing "as 'something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks.'" *Collins*, 462 F.3d at 762 (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). Accordingly, to establish deliberate indifference, the plaintiff must present evidence "that an individual

defendant intentionally disregarded the known risk to inmate health or safety." *Id.*; *Matos*, 335 F.3d at 557.

Applying these principles to Keith's case, the Court is obliged to conclude that her claims are without merit. Initially, the Court finds that factual disputes about what Keith said to Ruples and Justmann, and when such things were said, preclude a finding that they did not know that Keith presented a risk of suicide. Viewing the evidence presented in Keith's favor, it would not be unthinkable that an inmate coming from suicide observation, who told Ruples and Justmann that she was going to commit suicide, presented a significant risk of carrying out the threat. This suffices at the summary judgment stage to carry Keith's burden on this element. *See Pittmann ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 776–78 (7th Cir. 2014).[6]

Nevertheless, her claim falls apart because nothing in the record suggests that Ruples or Justmann were deliberately indifferent to Keith's suicide risk. Ruples did not force Keith to go inside cell 204-2; instead, he ordered her to wait in the back room for Justmann to arrive. He may have harbored more concern for her disobedience than her suicidality, but Keith's claim cannot rest solely on the idea that Ruples was not sufficiently sensitive to her complaints. Some objective manifestation of his indifference must have resulted, and to be sure, there is no evidence of that here.

---

[6]Defendants' reliance on *Scott v. Harris*, 550 U.S. 372 (2007), is misplaced. There, the Supreme Court found that a party's version of events need not be believed if indisputable evidence in the record, like a video recording of the relevant events, contradicted it. *Id.* at 380. But here, Defendants question the timing of Keith's suicide threats, her motivation for threatening suicide, and her motivation in bringing this lawsuit. (Docket #60 at 12–13). Keith disputes all these things, and such facts cannot be disproven in the manner contemplated by *Scott*, whatever Defendants may believe about Keith's veracity.

Keith's situation stands in stark contrast to cases like *Pittmann*, where the officers totally ignored the inmate's requests for crisis counseling, *Pittmann*, 746 F.3d at 772, or *Sanville*, where prison guards left a suicidal inmate in his cell, unsupervised, for hours, *Sanville*, 266 F.3d at 739; *see also Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (police officer placed a single call to a suicidal detainee to reassure him). More telling still is a comparison between her case and *Mombourquette ex rel. Mombourquette v. Amundson*, 469 F. Supp. 2d 624 (W.D. Wis. 2007). There, the court found a jury question existed where, upon returning from the hospital after a suicide attempt, correctional officers did not place the inmate on suicide watch, put her in observation, or keep her away from dangerous objects. *Id.* at 649. By contrast, it is indisputable here that Ruples took steps to keep Keith from entering cell 204-2—a situation which, in her view, may have led to her suicide. He also obtained help from a supervisor to address Keith's behavior. Thus, no reasonable jury could find that Ruples was deliberately indifferent since he "responded reasonably to the risk [of harm]." *Peate*, 294 F.3d at 882 (citing *Farmer*, 511 U.S. at 847).

The same goes for Justmann. She collected Keith and took her to the RHU for TLU placement. Justmann's choice not to force Keith to enter cell 204-4 but instead to place her in restricted housing was not an unreasonable response under the circumstances. During intake, Keith banged her head against the cell bars. She was apparently stopped from continuing to do this, either by her choice or by restraint. Justmann then contacted psychological services staff, and they thereafter took Keith back into observation. The fact that Keith was permitted a few seconds in which she could have harmed herself is not enough to carry the day for her. If that were true, correctional officers faced with suicidal prisoners would generally have to keep them

restrained from head to toe at all times or risk liability. *See Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009) (noting that a suicidal inmate presents prison officials with "a dilemma with no easy options").

Keith's theory in this case is that when she informed Ruples and Justmann that she would commit suicide, their sole duty was to contact psychological services personnel. (Docket #57 at 3–4); (Docket #67 at 4). She feels that rather than place her in TLU and issue her a conduct report, they should have placed her immediately in observation status. (Docket #58 at 7–8). In short, she believes she should not have been punished for refusing to follow Ruples' order.

But prison officials are not required to perform their duties "flawlessly," nor is negligence enough to establish a constitutional violation. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). A defendant need not "take perfect action or even reasonable action[,]. . .his action must be reckless before § 1983 liability can be found." *Cavalieri*, 321 F.3d at 622. The Court cannot say that Keith's desired response was the only way for Ruples and Justmann to reasonably respond to her suicide risk. The pertinent inquiry is whether they took reasonable steps to stop her from committing suicide, not whether they took the steps she would have preferred. *See Mombourquette*, 469 F. Supp. 2d at 650 (noting that "random acts of kindness" to the inmate did not suffice to show that the officers took steps to stop her from attempting suicide). Ruples' notifying his supervisor of a problem, and Justmann's committing Keith to the RHU and then observation—all within a space of forty-five minutes—were not unreasonable choices to make. At a minimum, their decisions were neither reckless, nor did they display

anything approaching total unconcern for Keith's safety. *Collins*, 462 F.3d at 762. No reasonable jury could find otherwise.[7]

Keith has therefore not raised any triable issues of material fact with respect to her claim that Ruples or Justmann were deliberately indifferent to her suicide risk. As to the other defendants—Schaub, Tarr, and Cooper—Keith's claims fail because none of these defendants had any personal involvement in the alleged misconduct, nor were they presented with any opportunity to correct the alleged misconduct before it occurred. Liability under Section 1983 is generally premised on personal fault. An individual cannot be held liable in a Section 1983 action unless she caused or participated in an alleged unconstitutional deprivation of rights. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). To demonstrate that these individuals were deliberately indifferent to her suicide risk, Keith had to proffer evidence that they knew of a substantial risk that she would commit suicide and disregarded it. *Collins*, 462 F.3d at 761. To establish that any of them might be liable in a supervisory capacity, Keith would have to meet an even higher bar, showing that they knew about the

---

[7]Nor were Ruples' actions inconsistent with Department of Corrections policy, as Keith seems to believe. (Docket #57 at 4). The relevant policies provide that a staff member who discovers that an inmate is attempting self-harm should "notify Security staff or other staff available nearby." (Docket #58-1 at 8). Although Keith was not actually attempting suicide at the time, Ruples followed this policy, and Keith does not explain what better or different result she expected had Ruples contacted the psychological services staff instead. She seems to think that contacting psychological services for a placement in observation was the better option in her case, (Docket #58 at 8–9), but this is not the relevant standard. Moreover, Keith has not explained why her placement in observation less than an hour later, after she attempted suicide during RHU intake, was not sufficient.

unconstitutional actions of their subordinates and facilitated them, approved them, condoned them, or turned a blind eye to them. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Here, the most that can be said about Tarr is that he removed the no-contact order between Castillo and Keith. No evidence suggests he had knowledge of Keith's suicidal tendencies or that removing the no-contact order, which preceded her suicide threats, was an act of deliberate disregard for those tendencies. As for Schaub and Cooper, they were only involved in this case because Cooper issued punishment to Keith as a result of Justmann's conduct report, and Schaub affirmed the decision. Neither of these individuals had a role in the events of April 27, 2015, nor could they have acted to remedy any alleged misconduct afterwards. As such, there can be no claim maintained against them on these facts. *Zentmeyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000). Therefore, Keith's claims against all Defendants must be dismissed.

5. **CONCLUSION**

The Court finds that Keith has failed to raise triable issues of fact as to her remaining claims in this case. As a result, the Court must grant summary judgment to Defendants and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #59) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's motion for summary judgment (Docket #57) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's motion for a declaratory judgment (Docket #66) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff Crystal Keith's motion for an injunction (Docket #70) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge